# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2641

_____

| | | |
|---|---|---|
| David C. Eggleton, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Plasser & Theurer Export Von | * | District Court for the District of |
| Bahnbaumaschinen Gesellschaft, | * | Nebraska. |
| MBH; Franz Plasser | * | |
| Bahnbaumaschinen | * | |
| Industriegesellschaft, MBH, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: June 13, 2007
Filed: July 25, 2007

_____

Before MELLOY, SMITH, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff David Eggleton sued defendants Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH and Franz Plasser Bahnbaumaschinen Industriegesellschaft, MBH ("Plasser," collectively) in Virginia state court for personal injuries arising from his operation of a Plasser-manufactured railroad maintenance machine. Plasser removed the case to the United States District Court for the Eastern District of Virginia ("Virginia district court"). That court found that

it lacked personal jurisdiction over Plasser, and it transferred the case to the United States District Court for the District of Nebraska ("Nebraska district court") pursuant to 28 U.S.C. § 1406(a). After the transfer, Plasser moved the Nebraska district court to dismiss the case because Eggleton's claims were untimely under Nebraska law. Eggleton's claims were timely under Virginia law, however, and he urged the Nebraska district court to apply Virginia law to the transferred case. The Nebraska district court agreed that Virginia law should govern, and it issued an order denying Plasser's motion to dismiss. Noting our circuit's conflicting lines of authority on the issue of whether the law of the transferor or transferee forum applies to claims transferred under § 1406(a), the Nebraska district court certified the issue for immediate appeal to this court. 28 U.S.C. § 1292(b). We permitted the appeal. Because we believe that the Nebraska district court must apply local choice-of-law rules to a case transferred pursuant to § 1406(a) under the facts at issue here, we now reverse and remand with directions to apply Nebraska's statute of limitations to Eggleton's claims.

## I. BACKGROUND

David Eggleton is and was during all times relevant to this appeal a citizen and resident of Virginia. In 1998, he was employed by the Plasser American Corporation ("PAC"), a Delaware corporation with its principal place of business in Virginia. PAC performs track maintenance for railroads, and the Burlington Northern Railroad engaged PAC's services. These services included performing maintenance and repair work upon a track in Nebraska. PAC sent Eggleton to work on the project there, where he would be required to operate the RM-802 ballast cleaning machine. The RM-802 was designed and manufactured in Europe by Plasser, an Austrian business, and sold f.o.b. Germany to its sole American customer, PAC. On September 6, 1998, Eggleton was performing routine maintenance on the machine when it engaged into gear. The machine pinched his body between a conveyor and another moving part, thus causing serious injuries.

Eggleton filed suit against Plasser in Virginia state court on September 1, 2000, thus satisfying Virginia's two-year statute of limitations for personal-injury claims. Va. Code Ann. § 8.01-243(A). He did not pursue the action, and the state court granted his motion for a voluntary nonsuit on January 23, 2004. In Virginia, a plaintiff may take one voluntary nonsuit as a matter of right. Va. Code Ann. § 8.01-380(B). The plaintiff may then re-file the same action provided he does so within six months or within the original statute of limitations for the claim, whichever period is longer. See Va. Code Ann. § 8.01-229(E)(3) ("If a plaintiff suffers a voluntary nonsuit . . ., the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months . . . or within the original period of limitation . . . whichever period is longer."); Sheets v. Castle, 559 S.E.2d 616, 620 (Va. 2002) ("A nonsuit does not involve a decision on the merits, rather, it simply puts an end to the present action, but is no bar to a subsequent action for the same cause.") (quotation and alterations omitted).

Eggleton re-filed his suit in Virginia state court on June 3, 2004, within the six-month limit of § 8.01-229(E)(3). Plasser removed the action to the United States District Court for the Eastern District of Virginia on diversity grounds. Plasser then moved to dismiss Eggleton's claims, arguing that it was not subject to personal jurisdiction in Virginia. After discovery, the Virginia district court ruled on the motion. It agreed that it lacked personal jurisdiction over Plasser, but noted that it was a "close case" that became clear "[o]nly after the jurisdictional discovery period ended." It also found that the Nebraska district court would have personal jurisdiction over Plasser. For that reason, the Virginia district court did not dismiss the case and instead chose to transfer it to the United States District Court for the District of Nebraska. See 28 U.S.C. § 1406(a) (allowing a district court, when confronting a suit filed in an improper venue, to transfer the case "to any district or division in which it could have been brought" rather than dismiss the case when doing so would serve "the interest of justice"); Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (holding that

§ 1406(a) grants district courts the power to transfer cases for lack of personal jurisdiction, as well as for improper venue).

Upon transfer to the Nebraska district court, Plasser moved to dismiss the case because Eggleton's re-filed claims were untimely under the applicable Nebraska statute of limitations. Nebraska has a four-year statute of limitations on product liability actions. Neb. Rev. Stat. § 25-224(1). Plasser argued that this statute should apply to Eggleton's claims under Nebraska's choice-of-law rules. See Restatement (Second) of Conflict of Laws § 142(1) ("An action will not be maintained if it is barred by the statute of limitations of the forum . . . ."); FDIC v. Nordbrock, 102 F.3d 335, 338 (8th Cir. 1996) (noting that "the Nebraska Supreme Court, as a general matter, utilizes the Restatement (Second) for issues relating to a choice of law").[1] As described above, Eggleton took a voluntary nonsuit and re-filed his case in Virginia state court in 2004—almost six years after his original injury. Nebraska law does not allow for tolling of the statute of limitations "when the original action failed . . . as a result of voluntary dismissal by the plaintiff." Neb. Rev. Stat. § 25-201.01(2). Therefore, the case would have become untimely had Eggleton originally brought it in Nebraska and followed the same course of litigation that he did in Virginia.

Eggleton urged the Nebraska district court to apply Virginia's choice-of-law rules to his claims. Virginia courts apply "the substantive law of . . . the place of the wrong, and the procedural law of Virginia." Jones v. R.S. Jones & Assocs., Inc., 431 S.E.2d 33, 34 (Va. 1993). The classification of matters as substantive or procedural

[1]We note that Nebraska has recently passed a statute amending its choice-of-law rules with regard to statutes of limitations. See Neb. Rev. Stat. § 25-3203 (2006) (declaring that Nebraska courts generally must apply the limitation period contained in the law of the state upon which a claim is substantively based). This statute applies only to claims accruing "after July 14, 2006," however. Neb. Rev. Stat. § 25-3206. Because Eggleton's cause of action accrued in 1998, Nebraska choice-of-law rules as they existed prior to the passage of § 25-3203 are applicable to this case.

is itself a substantive question, and Virginia courts look to the "place of the wrong" to determine "what is substantive and what is procedural." Id. "Nebraska consider[ed] its statute of limitations as procedural" during the time period relevant to this case. Nordbrock, 102 F.3d at 338; but see Neb. Rev. Stat. § 25-3203 (2006) (altering the manner in which Nebraska considers its statute of limitations as to claims arising after July 14, 2006). Therefore, if the Nebraska district court utilized Virginia's choice-of-law rules, the Virginia statute of limitations would apply to Eggleton's claims. Eggleton argued that it was appropriate to apply Virginia choice-of-law rules to his case. He asserted that he had filed his claims in good faith in the Virginia state court without knowledge of any jurisdictional defect, had reasonably relied upon Virginia law regarding the timeliness and permissible manner of pursuing his claims, and had filed, dismissed, and re-filed his claims in conformity with that law. Therefore, he claimed that it would be unjust and contrary to the purpose of the transfer statute to dismiss his claims as untimely under Nebraska law.

The Nebraska district court agreed with Eggleton and denied Plasser's motion to dismiss. It emphasized Eggleton's good faith in filing the case in Virginia, and it relied upon Eighth Circuit precedent for applying the law of the transferor forum in a case that is transferred pursuant to 28 U.S.C. § 1406(a). See Mayo Clinic v. Kaiser, 383 F.2d 653, 656 (8th Cir. 1967). It also noted the existence of a conflicting panel opinion within our circuit. See Wisland v. Admiral Beverage Corp., 119 F.3d 733, 736 (8th Cir. 1997). For this reason, the district court certified the issue for immediate appeal to this court. See 28 U.S.C. § 1292(b) (allowing district courts to certify interlocutory orders for immediate appeal when the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation"). We permitted the appeal. See id. ("The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order . . . .").

## II. DISCUSSION

We review a district court's choice-of-law determination de novo.  Schwan's Sales Enters., Inc. v. SIG Pack, Inc., 476 F.3d 594, 596 (8th Cir. 2007).  In general, "[t]he district court must apply the choice-of-law rules of the forum state." Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1028 (8th Cir. 2003).  This rule is not absolute, however.  For example, if a district court in one state transfers an otherwise properly filed case to a district court in another state solely "[f]or the convenience of parties and witnesses," 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law rules of the state in which the transferor court sits. Ferens v. John Deere Co., 494 U.S. 516, 531 (1990).  This is because "[t]here is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." Van Dusen v. Barrack, 376 U.S. 612, 633-34 (1964).

### A.  Conflicting Authority: Mayo Clinic and Wisland

In the present case, we deal with the question of which state's choice-of-law rules to apply when the plaintiff initially chose an improper forum for his case.  As noted by the Nebraska district court, we have published two conflicting opinions on this issue.

In Mayo Clinic, the plaintiff (a citizen of Illinois) sued Mayo Clinic and two of its doctors (citizens of Minnesota) in Illinois federal court for damages arising from alleged medical malpractice that occurred in Minnesota.  Mayo Clinic, 383 F.2d at 653.  The defendants moved to quash the service of process and to dismiss the case for lack of personal jurisdiction; the plaintiff moved to transfer the case to federal court in Minnesota pursuant to 28 U.S.C. § 1406(a).  Id.  The district court granted both the motion to transfer and the motion to quash the service of process.  Id.

-6-

Because the district court had quashed service, the plaintiff's case could not satisfy the Minnesota statute of limitations because an action is not commenced under Minnesota law until effective service is made upon the defendants, Minn. R. Civ. P. 3.01; in effect, the grant of the motion to quash barred the plaintiff's case under Minnesota law. Id. at 654, 656. Under Illinois law, actions are commenced upon the filing of a complaint, and therefore the plaintiff had satisfied the Illinois statute of limitations. Id. at 656.

We resolved the choice-of-law issue in favor of the plaintiff: "We have reached the conclusion that under the facts here the law of the transferor forum should govern and that the question of commencement of the action is, therefore, governed by the law of Illinois." Id. In doing so, we noted that the plaintiff had commenced his case pursuant to Illinois law within the time limitations under either Illinois or Minnesota law (even if he had not met the precise procedural requirements for commencing a case under Minnesota law within that state's statute of limitations). Id. The plaintiff had also diligently sought to comply with Minnesota procedural requirements for commencing an action upon transfer to Minnesota. Id.

In Wisland, the plaintiff (a citizen of Wisconsin) sued the defendants (citizens of South Dakota) in Wisconsin federal court for damages arising from a motorcycle accident in South Dakota. Wisland, 119 F.3d at 734. The plaintiff commenced the action properly under Wisconsin law by filing a summons and complaint with the court, and she did so within Wisconsin's three-year statute of limitations. Id. at 735. The defendants moved to dismiss the case for lack of personal jurisdiction; by stipulation of the parties, the Wisconsin federal court transferred the case to federal court in South Dakota. Id. at 734-35. After the transfer, the defendants moved for summary judgment, arguing that the plaintiff's claim was time-barred under the South Dakota statute of limitations. Id. at 735. In South Dakota, a plaintiff's action does not commence until the defendants or the local process-serving officials actually receive the respective summonses; because those parties did not receive the summonses from

the plaintiff until after the expiration of South Dakota's three-year statute of limitations, her claim would be barred under South Dakota law. Id.

In that case, we ruled in favor of the defendants: "A § 1406(a) transfer calls for application of the law of the transferee court . . . which in this case is the law of South Dakota." Id. at 736. We noted the rationale for this general rule—the avoidance of forum shopping by a plaintiff seeking the benefit of advantageous law in a forum where personal jurisdiction is lacking or venue is improper—and we rejected Wisland's argument that the Wisconsin federal court was, in fact, a proper venue for her case. Id. We did not cite or attempt to distinguish Mayo Clinic.

We see no principled way to reconcile the respective holdings in Mayo Clinic and Wisland. The relevant facts are almost indistinguishable. In each case, the plaintiff followed the procedures to commence an action in a court that lacked personal jurisdiction over the defendants and/or was an improper venue for the case. In each case, the plaintiff filed the action within the time allowed by the statute of limitations of both the transferee forum and the transferor forum. In each case, however, a difference in the respective requirements of state civil procedure between the transferee forum and the transferor forum meant that the plaintiff's case—which was properly commenced within the applicable statute of limitations in the transferor forum—was not properly commenced within the applicable statute of limitations in the transferee forum. In short, there are no factual or legal distinctions sufficient to allow us to harmonize these cases.[2] With regard to the question of which forum's

_____

[2]The only arguably relevant factual distinction between these two cases is that the plaintiff in Mayo Clinic actually attempted to serve the defendants with summonses (and therefore comply with Minnesota procedures for commencing a lawsuit) within the transferee forum's statute of limitations, whereas the plaintiff in Wisland did not attempt to serve the defendants (and therefore comply with South Dakota procedures for commencing a lawsuit) until the very date that the transferee

statute of limitations to apply in a case transferred under § 1406(a), they stand in conflict.

While we may not resolve this conflict by overruling a decision of another panel of this court, we may choose which precedent to follow. Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1228 n.8 (8th Cir. 1995). The rule expressed in

---

forum's statute of limitations expired. In short, had the Illinois federal court not quashed the service of process at the same time it refused to transfer the case, the plaintiff in Mayo Clinic would have satisfied the Minnesota statute of limitations.

We do not believe that this minor factual difference adequately distinguishes the cases. On its own, the fact of the plaintiff's attempted service within the Minnesota statutory period in Mayo Clinic does not establish that the Mayo Clinic plaintiff pursued his claim with greater diligence than the plaintiff in Wisland. Both plaintiffs attempted to serve the respective defendants within one day of filing their complaints. In both cases, it appears that the plaintiffs merely sought to effectuate service within the respective time limits of the jurisdictions where they originally and erroneously filed their cases; there is no indication that either plaintiff filed a complaint and attempted to serve the defendants more quickly because of some concern about taking the steps necessary to commence his or her case within the statute of limitations of any jurisdiction other than the one in which the case was filed.

Further, to the extent that one may argue that the different results in Mayo Clinic and Wisland arise from some difference in the parties' good faith efforts to comply with the statute of limitations of both the transferor forum and the transferee forum, we note that the facts in Wisland weigh heavily against such a distinction. Had the South Dakota process server received the summons a mere four days earlier, the plaintiff in Wisland would have satisfied the South Dakota statute of limitations. If Mayo Clinic stands for the proposition that we may make choice-of-law determinations in cases transferred under § 1406(a) on the basis of equitable considerations, surely the outcome of such a determination would not stand or fall upon the passage of four days. As such, we cannot reconcile Mayo Clinic and Wisland by reference to the Mayo Clinic plaintiff's attempted service of the summonses within the Minnesota statutory period.

-9-

Wisland represents the prevailing law in our sister circuits, and we believe we should consider Wisland as the controlling law on this appeal.

In the forty years since we decided Mayo Clinic, no circuit has followed its call to apply the law of the transferor forum to rescue a case with jurisdictional defects in the original court from a statute of limitations bar in the transferee forum—including our own. See, e.g., Doering *ex rel.* Barrett v. Copper Mountain, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001) ("When the transferor court lacks personal jurisdiction . . . the choice of law rules of the transferee court apply."); Wisland, 119 F.3d at 736 ("A § 1406(a) transfer calls for application of the law of the transferee court . . . ."); Schaeffer v. Village of Ossining, 58 F.3d 48, 50 (2d Cir. 1995) ("Following a section 1406(a) transfer, . . . the transferee court should apply whatever law it would have applied had the action been properly commenced there.") (quotation omitted); Myelle v. Am. Cyanamid Co., 57 F.3d 411, 413 (4th Cir. 1995) ("[I]t is well settled in this circuit that a district court receiving a case under . . . § 1406(a) must apply the law of the state in which it is held rather than the law of the transferor district court.") (quotation omitted); Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1141 (5th Cir. 1992) ("Following a section 1406(a) transfer, regardless of which party requested the transfer or the purpose behind the transfer, the transferee court must apply the choice of law rules of the state in which it sits.") (quotation and alteration omitted); Manley v. Engram, 755 F.2d 1463, 1467 (11th Cir. 1985) ("When a transfer . . . is granted pursuant to § 1406(a), . . . the transferee court must apply the choice of law rules of the state in which it sits.") (quotation omitted); Nelson v. Int'l Paint Co., 716 F.2d 640, 643-44 (9th Cir. 1983) ("We decline to follow Mayo Clinic; it is a minority view . . . ."); Martin v. Stokes, 623 F.2d 469, 472 (6th Cir. 1980) ("[F]ollowing a transfer under § 1406(a), the transferee district court should apply its own state law rather than the state law of the transferor district court.")

Our sister circuits' apparently universal agreement on this general rule is grounded in well-established choice-of-law principles. The plaintiff has the choice

of the initial forum. If he chooses an improper venue or one that lacks personal jurisdiction over the defendants, then application of the law of the original, legally defective forum upon transfer to a legally appropriate forum carries dual risks. First, it may create unfairness to defendants. A defendant in such a situation does not expressly or impliedly consent to suit in the defective forum, yet she would be made to suffer the choice-of-law consequences of a plaintiff's mistake in choosing such a forum to file his lawsuit.[3] Second, a rule calling for application of the law of the defective forum may encourage procedural gamesmanship among plaintiffs generally. Such a rule creates an incentive for plaintiffs to engage in undue forum shopping; that is, it opens the possibility for a plaintiff to intentionally file a case in a forum with advantageous law (but without venue and/or personal jurisdiction), with the knowledge that he will receive the benefits of the law so long as he can convince the original district court to transfer the case rather than dismiss it outright. See Wisland, 119 F.3d at 736. Therefore, we agree with our sister circuits that the general rule expressed in Wisland, and not the rule expressed in Mayo Clinic, is the more logical and well-reasoned approach to choice-of-law determinations following a § 1406(a) transfer.

B. Whether an Exception to the Wisland Rule is Appropriate in this Case

Eggleton argues that Wisland need not dictate the outcome of his appeal. He attempts to distinguish the facts of his case from those of Wisland, and he urges this court to carve out an exception to the general rule that we apply the law of the

---

[3]This is distinguishable from a situation where a district court transfers a case "for the convenience of parties and witnesses" pursuant to 28 U.S.C. § 1404(a). In such a case, the plaintiff's initial forum choice is legally appropriate, and it is therefore fair to subject a defendant to suit under the laws of that forum. Unlike § 1406(a), courts use § 1404(a) as a mere "housekeeping measure" and transfer cases under that statute solely to promote litigation convenience and efficiency. Ferens, 494 U.S. at 526.

transferee forum in § 1406(a) cases. He notes that he reasonably believed that Plasser was subject to suit in Virginia,[4] he proceeded accordingly, and he may suffer the harsh and arguably disproportionate consequences of filing suit in Virginia if we apply the Nebraska statute of limitations to his case. Eggleton also points out that there is no evidence that his decision to file his suit in Virginia was the product of any deliberate attempt to forum-shop for favorable state law. Therefore, Eggleton argues that the application of the general rule in Wisland would be unjust, and he essentially argues for the creation of a limited, equitable exception to that general rule when its application would result in substantial injustice.

We leave the issue of whether to create such an exception for another day, because we find the relevant facts in this case weigh in favor of applying Wisland and would not warrant applying an equitable exception. After filing his claims against Plasser in a timely fashion, Eggleton neglected the case for more than three years. He took a voluntary nonsuit and then re-filed the case six months later. He waited more than one year after re-filing the case to serve Plasser, thus finally giving the defendant formal notice of the pending lawsuit. While all of these actions were apparently permissible under Virginia law, Eggleton's inertia in pursuing his case against Plasser militates against his claim of injustice in the application of Nebraska law. Had

---

[4]Virginia's lack of personal jurisdiction over Plasser was by no means clear at the time Eggleton filed his suit. Plasser's sole American customer was a corporation subject to general personal jurisdiction in Virginia, and the business relationship and similar company names created the appearance that either Plasser or PAC could be the corporate alter ego of the other. In addition, it may not have been apparent to Eggleton upon filing his complaint that the Nebraska courts would have personal jurisdiction over Plasser. See Wagner v. Unicord Corp., 526 N.W.2d 74, 80 (Neb. 1995) (holding that a defendant must make "purposeful contact" with Nebraska for a Nebraska court to exercise personal jurisdiction over it); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980). As a result, Eggleton's initial decision to sue Plasser in Virginia rather than Nebraska was a reasonable choice at the time he filed the suit.

Eggleton diligently pursued the case against Plasser, he could have learned of Plasser's personal-jurisdiction defense with ample time to avoid the misstep of taking a voluntary nonsuit in Virginia. Greater diligence also would have allowed Eggleton to begin the jurisdictional discovery process earlier, which may have enabled him to learn necessary facts in sufficient time to re-file the complaint in Nebraska within the Nebraska statute of limitations. Further, while it was reasonable for Eggleton to believe that Plasser was probably subject to personal jurisdiction in Virginia, it was by no means reasonable for him to rely on this belief to such an extent that he ignored the possibility that Plasser might object to personal jurisdiction and force a transfer of the case to another jurisdiction. In short, in circumstances where personal jurisdiction or venue is uncertain, a plaintiff who willfully delays the discovery of facts that would remove such doubts faces a steep hurdle in arguing any injustice based on the application of the choice-of-law rules of the transferee forum, including that forum's applicable statute of limitations. Therefore, we refuse Eggleton's request to craft and apply an exception to the general rule of Wisland in this case.

## III. CONCLUSION

The district court was required to choose between conflicting lines of authority from our court, and it chose to apply Mayo Clinic rather than Wisland. For the foregoing reasons, we believe it is appropriate to follow the holding of Wisland. We also believe the facts of this case fail to warrant the creation of an exception to the general rule that "[a] § 1406 transfer calls for application of the law of the transferee court." Wisland, 119 F.3d at 736. Therefore, we reverse the order of the district court, direct the district court to apply Nebraska's statute of limitations to Eggleton's claims, and remand the case for further proceedings consistent with this opinion.

GRUENDER, Circuit Judge, concurring.

I concur fully in the Court's judgment and join its opinion except for part II-B. Unlike the Court, I would decline Eggleton's invitation even to consider fashioning a federal common law exception to Wisland's rule that "[a] § 1406(a) transfer calls for application of the law of the transferee court . . ." 119 F.3d at 736. Instead, I would apply Wisland's holding as a bright-line rule so that litigants must look to the law of the transferee forum, beginning with its choice of law rules, for any exceptions to or relief from statutes of limitations consequences like those here. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. . . . There is no federal general common law."); see, e.g., Nelson, 716 F.2d at 644-46 (affirming the district court's determination that the law of the transferee forum applied after a § 1406(a) transfer and examining choice of law rules and equitable exceptions to the statute of limitations under the laws of the transferee state); Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1109-15 (5th Cir. 1981) (holding that a transferee court must apply the choice of law rules of the state in which it sits following a § 1406(a) transfer and analyzing choice of law rules and the statute of limitations under the laws of the transferee state). Because Eggleton has made no argument to this Court regarding Nebraska's choice of law rules and any resulting state-law grounds for relief from the applicable statute of limitations, I would not reach these issues. See Cormack v. Settle-Beshears, 474 F.3d 528, 531 (8th Cir. 2007) (noting that an argument not raised on appeal is waived).

_____

-14-